**GRUNGO COLARULO, LLC**
Richard Grungo, Jr., Esquire
William A. Colarulo, Jr., Esquire
1940 Route 70 East,
Cherry Hill, New Jersey 08003
(856) 528-4494

*Attorneys for Plaintiff RoseAnn Romeo*

By:  RICHARD GRUNGO, JR., ESQUIRE (rgrungo@gcinjurylaw.com)
      Attorney I.D.  RG2611

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **ROSEANN ROMEO,**<br>**on behalf of herself and other persons**<br>**similarly situated,**<br><br>**Plaintiff(s)**<br><br>v.<br><br>**NISSAN NORTH AMERICA, INC.,**<br>**NISSAN EXTENDED SERVICES NORTH**<br>**AMERICA, G.P., and NISSAN**<br>**EXTENDED SERVICES NORTH**<br>**AMERICA, INC.,**<br><br>**Defendants.** | Civil Action No.:<br><br>Civil Action<br><br>**CLASS-ACTION COMPLAINT** |

Plaintiff, RoseAnn Romeo, by way of Complaint on behalf of herself and others similarly situated, individually and as class representative, upon information and belief, except for the allegations concerning Plaintiff's own actions, says as follows:

## INTRODUCTION

1.      This is a class-action Complaint brought by Plaintiff, ROSEANN ROMEO

("Plaintiff") on her own behalf and on behalf of all others similarly situated against Defendants,

NISSAN NORTH AMERICA, INC. ("NNA"); NISSAN EXTENDED SERVICES NORTH

AMERICA, G.P. ("NESNA G.P."); NISSAN EXTENDED SERVICES NORTH AMERICA,

INC. ("NESNA Inc.") collectively referred to as **NISSAN or Defendants**, to obtain declaratory,

injunctive and monetary relief for a class of consumers victimized by the unconscionable

business practices of Defendants, in violation of the New Jersey Truth in Consumer Contract,

Warranty and Notice Act, N.J.S.A. 56:12-14, *et seq.* ("TCCWNA"), New Jersey Service

Contract Act, N.J.S.A. 56:12-87, *et seq.* ("SCA") and New Jersey Consumer Fraud Act, N.J.S.A.

56:8-1, *et seq.* ("CFA").

2.      This case involves the purchase of a new car and a Vehicle Service Contract

("VSC") for same offered and sold to Plaintiff, RoseAnn Romeo by Defendants, and the VSC's

violations of the TCCWNA, the SCA, and the CFA.

3.      The SCA defines "service contract" as follows:

> 'Service contract' means a contract or agreement between a
> provider and a consumer for any duration, for a provider fee or
> other separately stated consideration, to perform, or to provide
> indemnification for the performance of, the maintenance, repair,
> replacement, or service of property for the operational or structural
> failure of the property due to a defect in materials or workmanship
> or due to normal wear and tear, and which may include additional
> provisions for incidental payment of indemnity under limited
> circumstances.  In the case of a motor vehicle, such circumstances
> may include towing, rental, and emergency road services, and
> other road hazard protections.  A service contract may provide for
> the maintenance, repair, replacement, or service of the property for
> damage resulting from power surges or interruption, or accidental
> damage from handling.  A service contract also includes a motor
> vehicle ancillary protection product.  Service contracts may

2

provide for leak or repair coverage to house roofing systems.  A 'service contract' does not include a contract in writing to maintain structural wiring associated with the delivery of cable, telephone, or other broadband communication services or a contract in writing related to the delivery of satellite television or broadband communication services.

N.J.S.A. 56:12:87.

## PARTIES

4.      Plaintiff, ROSEANN ROMEO, is an individual consumer residing at 2307 Plantation Drive, Glendora, New Jersey.  Plaintiff was offered and purchased a VSC from Defendants.

5.      Plaintiff, ROSEANN ROMEO, purchased a new 2015 Nissan Altima 2.5 from Woodbury Nissan, Inc. on September 19, 2015.  At the time of the sale, Plaintiff was offered and purchased a VSC from the Defendants in the amount of $ 607.00.  (*See* VSC, attached as Exhibit A)

6.      NNA is a California company whose operations include automotive styling, engineering, consumer and corporate financing, sales and marketing, distribution and manufacturing.  NNA coordinates all of its parent company, Nissan Motor Co., LTD.'s, various activities in North America.  Headquartered in Franklin, Tennessee, NNA offers and sells VSCs on vehicles in the United States, and regularly offers and sells a variety of VSCs to consumers in New Jersey under the following programs:  the Security+Plus, QualityGuard+Plus, the Maintenance+Plus Agreement, Elite-Infiniti Extended Protection Plan (IEEP), Infiniti Elite Maintenance Agreement and QualityGuard+Plus Maintenance Agreement.  Under these programs, and others, NNA offers and sells Vehicle Service Contracts ("VSC"), Certified Pre-Owned Wraps ("CPO"), Prepaid Maintenance ("PPM"), Guaranteed Auto Protection ("GAP"), Tire & Wheel ("T&W"), Key Replacement, Theft Protection, Paintless Dent Repair ("PDR"),

3

Lease Wear & Tear ("LW&T"), Platinum and Ultimate Platinum protection plans for most New and Pre-Owned vehicles sold at Nissan and Infiniti dealerships in New Jersey.

7.      NESNA G.P. is a Delaware company that offers and sells VSCs in the United States with its headquarters in Franklin, Tennessee, and regularly offers and sells a variety of VSCs to consumers in New Jersey under the following programs:  the Security+Plus, QualityGuard+Plus, the Maintenance+Plus Agreement, Elite-Infiniti Extended Protection Plan (IEEP), Infiniti Elite Maintenance Agreement and QualityGuard+Plus Maintenance Agreement. Under these programs, and others, NESNA G.P. offers and sells Vehicle Service Contracts ("VSC"), Certified Pre-Owned Wraps ("CPO"), Prepaid Maintenance ("PPM"), Guaranteed Auto Protection ("GAP"), Tire & Wheel ("T&W"), Key Replacement, Theft Protection, Paintless Dent Repair ("PDR"), Lease Wear & Tear ("LW&T"), Platinum and Ultimate Platinum protection plans for most New and Pre-Owned vehicles sold at Nissan and Infiniti dealerships in New Jersey.  NESNA G.P. is the parent company of NESNA, Inc. and guarantees all VSCs issued by NESNA, Inc.

8.      NESNA Inc. is a Delaware company that offers and sells VSCs in the United States with its headquarters in Franklin, Tennessee, and regularly offers and sells a variety of VSCs to consumers in New Jersey under the following programs:  the Security+Plus, QualityGuard+Plus, the Maintenance+Plus Agreement, Elite-Infiniti Extended Protection Plan (IEEP), Infiniti Elite Maintenance Agreement and QualityGuard+Plus Maintenance Agreement. Under these programs, and others, NESNA Inc. offers and sells Vehicle Service Contracts ("VSC"), Certified Pre-Owned Wraps ("CPO"), Prepaid Maintenance ("PPM"), Guaranteed Auto Protection ("GAP"), Tire & Wheel ("T&W"), Key Replacement, Theft Protection, Paintless Dent Repair ("PDR"), Lease Wear & Tear ("LW&T"), Platinum and Ultimate Platinum

protection plans for most New and Pre-Owned vehicles sold at Nissan and Infiniti dealerships in New Jersey.

9.      At all relevant times, Defendants were the agents and employees of each of the remaining Defendants and were at all times acting within the purpose and scope of said agency and employment and each of the Defendants ratified and approved said agency and employment and ratified and approved the acts of its/their agent(s).

10.      Upon information and belief the Defendants are commonly owned, alter ego corporate entities.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) because there are, upon information and belief, more than 100 class members and because the amount in controversy, upon information and belief, exceeds five million dollars ($5,000,000) exclusive of interest and costs, and at least one member of the Class is a citizen of a state different from Defendants.  This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims asserted herein, including but not limited to the processing and investigation of Plaintiff's claims herein, occurred in this District, as many of the underlying transactions complained of herein occurred in this District, and Defendants conduct business in this District by offering and selling VSCs under form contracts at issue here.

13.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

### The Consumer Protection Statutes Violated

### THE TCCWNA GENERALLY

14.     The TCCWNA is a remedial consumer statute and by passing it, the Legislature's intent was to expand rather than constrict the consumer's rights.

15.     The TCCWNA provides in relevant part as follows:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.  Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.

N.J.S.A. 56:12-15.

16.     The TCCWNA was designed to prevent merchants from imposing on New Jersey consumers contract provisions whose mere inclusion in a consumer contract would violate the rights of consumers and deceive them into thinking such illegal provisions were valid, and thereby, they would not even try to enforce their rights:

> Far too many consumer contracts, warranties, notices and signs, contain provisions which clearly violate the rights of consumers. Even though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights.

See Sponsor's Statement, Statement to Assembly Bill No. 1660 (May 1, 1980).

17.     The sponsor's statement in the TCCWNA's legislative history states that the

Legislature enacted TCCWNA to strengthen the CFA.  Sponsor's Statement to A-1660 (as introduced May 1, 1980).

18.     The TCCWNA's scope is best understood in its relation to other consumer protection statutes such as the SCA and the CFA.  The TCCWNA's legislative history speaks of holding all businesses liable for violations: "This bill prohibits businesses from offering or using provisions in consumer contracts, warranties, notices and signs that violate any clearly established right of a consumer." A- 1660, p. 3 (as introduced May 1, 1980).

19.     The TCCWNA provides that no consumer contract provisions in New Jersey can waive consumers' rights under the TCCWNA and that any such provision shall be "null and void." N.J.S.A. 56:12-16.  The TCCWNA states, in pertinent part:

> 56:12-16 Provision for waiver of rights under act; nullity; statement of provisions void, unenforceable or inapplicable in New Jersey.
>       No consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act.  Any such provision shall be null and void.  No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; provided, however, that this shall not apply to warranties.

20.     The TCCWNA is a cumulative statute rather than an exclusive one:

> The rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State, and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition.

N.J.S.A. 56:12-18.

21.     The TCCWNA states, in pertinent part:

> Any person who violates the provisions of this act shall be liable to

the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs. This may be recoverable by the consumer in a civil action in a court of competent jurisdiction or as part of a counterclaim by the consumer against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him.

N.J.S.A. 56:12-17.

22.     The TCCWNA does not require proof that the consumer suffered any damages or proof of intent on the merchant's part to violate the TCCWNA.  N.J.S.A. 56:12- 15 through 17.

23.     SCA and CFA violations constitute a violation of a "clearly established legal right" for TCCWNA purposes and therefore, support liability thereunder.

24.     The TCCWNA applies to this case.

## THE SCA GENERALLY

25.     On January 17, 2014, the Legislature enacted the Service Contract Act "SCA" and it was slated to take effect 180 days following such enactment or on or about July 16, 2014.

26.     The SCA "regulates the sale and implementation of certain service contracts for the repair, replacement, maintenance or service of properly used for personal, family or household purposes."  Assembly Consumer Affairs Committee Statement to Assembly No.1740, available at http://wwwnjleg.state.nj.us/2012/Bills/A2000/1714.0PDF.

27.     The SCA defines "consumer" as follows:

'Consumer' means a natural person who buys other than for purposes of resale any property that is distributed in commerce and that is normally used for personal, family, or household purposes and not for business or research purposes.

N.J.S.A. 56:12:87.

28.     Plaintiff(s) is/are consumers as defined by the SCA.

29.     The SCA defines "service contract" as follows:

> 'Service contract' means a contract or agreement between a provider and a consumer for any duration, for a provider fee or other separately stated consideration, to perform, or to provide indemnification for the performance of, the maintenance, repair, replacement, or service of property for the operational or structural failure of the property due to a defect in materials or workmanship or due to normal wear and tear, and which may include additional provisions for incidental payment of indemnity under limited circumstances . In the case of a motor vehicle, such circumstances may include towing, rental, and emergency road services, and other road hazard protections.  A service contract may provide for the maintenance, repair, replacement, or service of the property for damage resulting from power surges or interruption, or accidental damage from handling. A service contract also includes a motor vehicle ancillary protection product. Service contracts may provide for leak or repair coverage to house roofing systems.  A 'service contract' does not include a contract in writing to maintain structural wiring associated with the delivery of cable, telephone, or other broadband communication services or a contract in writing related to the delivery of satellite television or broadband communication services.

N.J.S.A. 56:12:87.

30.     The SCA defines "service contract holder" or "contract holder" as follows:

> 'Service contract holder' or 'contract holder' means a consumer who is the purchaser of a service contract or is entitled to the contractual benefits under the terms of the contract.

N.J.S.A. 56:12:87.

31.     The SCA states, in part: "Service contracts may be issued, offered for sale, or sold

in this State only in accordance with the provisions of this act."  N.J.S.A. 56:12-88.

32.     The SCA states, in part:

> A service contract issued, offered for sale, or sold in this State shall be written in a simple, clear, understandable, and easily readable way and shall contain the requirements set forth in this section, as applicable:
>
> a.   The provider's name, principal or other appropriate business address, and telephone number;

b.  The administrator's name, principal or other appropriate business address, and telephone number;

c.  The service contract holder's name and address to the extent this information is furnished by the contract holder, provided however, that a provider that bills a consumer for the provider fee on a periodic basis at a physical or electronic address provided by the service contract holder shall be exempt from the requirement of this subsection;

d.  The provider fee, or a reference to any other documentation which contains the provider fee and the terms under which the contract is sold;

e.  The property subject to coverage by the service contract, the contractual obligations of the provider with respect to that property, any limitations, exceptions, and exclusions, a toll-free telephone number for claim service, and complete instructions for making a claim for service on or replacement of the property covered by the contract, or for reimbursement for service on a replacement of the property;

f.  The amount of any deductible or service fee, as applicable;

g.  Whether the provider's use of refurbished, reconditioned, or non-original manufacturer's parts is permitted;

h.  Whether the service contract provides for consequential damages or preexisting conditions;

i.  The contractual obligations of the service contract holder, including, but not limited to, the duty of the contract holder to comply with the provisions of the owner's manual for the property and to protect the property against any further damage;

j.  The conditions governing the transferability of the service contract;

k.  the conditions governing the cancellation of the service contract by the service contract holder, which shall:

(1) permit the contract holder, if the contract holder makes no claim arising under the contract, to cancel the contract:

(a) within 10 days of receipt of the contract, or a longer period specified in the contract, if delivered at the time of purchase; or

(b) within 20 days of the date the contract was sent to the contract holder, or a longer period specified in the contract, if not delivered at the time of purchase; and

(2) if cancelled within the time period specified in subparagraph (a) or (b) of paragraph (1) of this subsection, require the provider to provide the contract holder with the full purchase price or amount paid on the contract by refund or credit to the account of the contract holder, and to additionally pay the contract holder a 10% per month penalty, based upon the purchase price of the contract, if the refund or credit is not completed within 45 days of the cancellation of the contract;

l.   the conditions governing cancellation of the service contract by the provider, prior to the expiration of the contract, which shall:

(1) require, except as provided in paragraph (2) of this subsection, that the provider mail a written notice to the contract holder at the contract holder's last known address:
   (a) which contains the reason for the cancellation and the effective date of the cancellation; and
   (b) is delivered at least five days prior to the effective date of the cancellation; and
(2) explain that a written notice shall not be required if the reason for cancellation is nonpayment of the provider fee, a material misrepresentation or omission, or a substantial breach of contractual obligations concerning the property or its use; and,

m.   whether the service contract is insured by a reimbursement insurance policy, and:

(1) if insured, the contract shall contain:
   (a) the insurer's name, principal or other appropriate business address, and telephone number accompanied by a conspicuous statement in substantially the following form: "Obligations of the provider under this service contract are insured under a service contract reimbursement insurance policy"; and
   (b) information concerning the procedure for the contract holder to present a claim arising under the contract directly to the reimbursement insurance company,

> pursuant to the insurer's obligations set forth in section 6 of this act, in the event that the provider does not comply with any contractual obligation pursuant to the contract within 60 days of presentation of a valid claim by a contract holder; or

> (2) if not insured, the contract shall contain a conspicuous statement in substantially the following form: "Obligations of the provider under this service contract are backed by the full faith and credit of the provider.

N.J.S.A. 56:12-93.

33.     The SCA makes the violation of any of its provisions a *per se* CFA violation.

Providing, in part, that "A violation of any provision of this act shall be an unlawful

practice and a violation of N.J.S.A. 56:8-1."  N.J.S.A. 56:12-96.

34.     The SCA requires, in part:

> Assurance of faithful performance required to sell service contracts.

>      a.  A person shall not issue, offer to sell, or sell service contracts in this State unless the provider complies with one or more of the following means of assuring faithful performance to its contract holders:

>      (1)  each service contract shall be insured under a reimbursement insurance policy issued by an insurer licenses, registered, or otherwise authorized to transact the business of insurance in this State, and which complies with the provisions of section 6 of this act;

>      (2)  a funded reserve account shall be established and maintained for its obligations under each contract issued and outstanding in this State, which reserves calculated at not less than 40% of gross consideration received, then less the amount of claims paid under those contracts.  If those reserves fall below the minimum required, the provider has 90 days to come into compliance without violation this section.  The reserve account shall be subject to examination and review by the director pursuant to section 10 of this act; or

>      (3)  alone or together with the provider's parent or other affiliated corporation, the provider shall maintain a new worth of stockholders' equity of not less than $100,000,000.  Upon request by the director, the provider shall provide the director with a copy of the provider's or it's parent's or other affiliated corporation's

most recent Form 10-K or Form 20-F, or successor form containing substantially the same information, filed with the Securities and Exchange Commission within the last 12-month period, or if the provider, or parent or other affiliated corporation, does not file this form with the Securities and Exchange Commission, a copy of the entity's audited financial statements, which show a net worth of the provider, or affiliated corporation's form or financial statements are filed to meet the provider's means of assuring faithful performance to its contract holders, the parent or other affiliated corporation, of not less than $100,000,000.  If the provider's parent's or other affiliated corporation's form or financial statements are filed to meet the provider's means of assuring faithful performance to its contract holders, the parent or other affiliated corporation shall agree to guarantee the obligations of the provider.

    b. Except for the requirements set forth in subsection a. of this section, the provider shall not subject to any additional financial security requirements by the director in order to issue, offer, or sell service contracts in this state.

    c. In addition to any applicable damages and penalties pursuant to subsection a. of section 10 of P.L.2013, c.197 (C.56:12-96), a person who sells a service contract that is not in compliance with P.L.2013, c.197 (C.56:12-87 et al.) or that is issued by a provider that is not in compliance with P.L.2013, c.197 (C.56 12-87 et al.) shall be jointly and severally liable for all covered contractual obligations arising under the terms of such contract or any service contract sold at a time when the provider of the contract is non-compliant.

N.J.S.A. 56:12-90

## THE CFA GENERALLY

35.    The CFA prohibits the use of "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or mission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  N.J.S.A. 56:8-2.

36.    Both the TCCWNA and the CFA provide that "[t]he right, remedies and

prohibitions" provided by these consumer protection acts "are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law of statutes of this State and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition." N.J.S.A. 56:12-18 (TCCWNA provision); *see also* N.J.S.A. 56:8-2.13 (CFA provision).

### The Plaintiff's Factual Background

37.     Since at least July 16, 2014, NISSAN, through its employees and/or agents, has offered, gave, displayed, and sold, upon information and belief, hundreds, if not more, VSCs in New Jersey to consumers which contain the same or substantially similar unenforceable provisions to those in the VSC sold to Plaintiff.

38.     As of July 16, 2014, NISSAN, upon information and belief, has more than 50 Nissan and Infiniti dealerships located in the State of New Jersey, through which NISSAN has offered, gave, displayed and entered into, said VSCs with consumers.

39.     At all relevant times, NISSAN regularly offered and sold a variety of VSCs to consumers in New Jersey under the following programs:  the Security+Plus, QualityGuard+Plus, the Maintenance+Plus Agreement, Elite-Infiniti Extended Protection Plan (IEEP), Infiniti Elite Maintenance Agreement and QualityGuard+Plus Maintenance Agreement.  These programs, and others, included VSC's for Certified Pre-Owned Wraps ("CPO"), Prepaid Maintenance ("PPM"), Guaranteed Auto Protection ("GAP"), Tire & Wheel ("T&W"), Key Replacement, Theft Protection, Paintless Dent Repair ("PDR"), Lease Wear & Tear ("LW&T"), as well as Platinum and Ultimate Platinum protection plans for most New and Pre-Owned vehicles sold at Nissan and Infiniti dealerships in New Jersey.

40.     Plaintiff, ROSEANN ROMEO, purchased a new 2015 Nissan Altima 2.5 from

Woodbury Nissan, Inc. on September 19, 2015.  At the time of the sale, Plaintiff was offered and purchased a VSC from the Defendants in the amount of $607.00.  (*See* VSC, attached as Exhibit A).

41.     NISSAN is subject to the aforesaid consumer protection statutes such as the SCA, CFA, and TCCWNA.

### The NISSAN VSC Provisions That Violate The Consumer Protection Statutes

42.     NISSAN violated the TCCWNA, the SCA, and/or the CFA by using deceptive, unconscionable and unlawful practices against Plaintiff and members of the Class and/or Subclass (as defined hereinafter), by displaying, showing, giving, offering and/or entering into form contracts, which are identical to or substantially similar to the VEHICLE SERVICE CONTRACT (*See* VSC, attached hereto as Exhibit A, which is incorporated as if fully alleged herein), with Plaintiff and members of the Class and/or Subclass, including but not limited to:

*Violations of SCA*

1. Failing to provide and properly identify "the provider's name, principal or other appropriate business address, and telephone number."  *See* N.J.S.A. 56:12-93(a).

2. Failing to provide and/or properly disclose "the administrator's name, principal or other appropriate business address, and telephone number."  *See* N.J.S.A. 56:12-93(b).

3. Failing to provide and/or properly disclose ". . .complete instructions for making a claim for service on or replacement of the property covered by the contract, or for reimbursement for service on a replacement of the property."  *See* N.J.S.A. 56:12-93(e)

4. Failing to provide or properly disclose "whether the service contract provides for consequential damages or preexisting conditions."  *See* N.J.S.A. 56:12-93(h)

5. Failing to provide or properly disclose "the conditions governing the cancellation of the service contract by the service contract holder," including failing to provide or disclose to consumers that Nissan is responsible "to additionally pay the contract holder a 10% per month penalty, based upon the purchase price of the contract, if the refund or credit is not completed within 45 days of the cancellation

of the contract." *See* N.J.S.A. 56:12-93(k)(b).

6. Failing to provide or properly disclose the conditions governing cancellation of the service contract by the provider, prior to the expiration of the contract, which shall:

> (1) require, except as provided in paragraph (2) of this subsection, that the provider mail a written notice to the contract holder at the contract holder's last known address:
>   (a) which contains the reason for the cancellation and the effective date of the cancellation; and
>   (b) is delivered at least five days prior to the effective date of the cancellation; and
> (2) explain that a written notice shall not be required if the reason for cancellation is nonpayment of the provider fee, a material misrepresentation or omission , or a substantial breach of contractual obligations concerning the property or its use;

> *See* N.J.S.A. 56:12-93(l)

7. Charging a $50 processing fee for cancellation of VSC's in violation of N.J.S.A. 56:12-93(k) and (l).

8. Failing to provide or properly disclose whether the service contract is insured by a reimbursement insurance policy, and:

> (1) if insured, the contract shall contain:
>   (a) the insurer's name, principal or other appropriate business address, and telephone number accompanied by a conspicuous statement in substantially the following form: "Obligations of the provider under this service contract are insured under a service contract reimbursement insurance policy"; and
>   (b) information concerning the procedure for the contract holder to present a claim arising under the contract directly to the reimbursement insurance company, pursuant to the insurer's obligations set forth in section 6 of this act, in the event that the provider does not comply with any contractual obligation pursuant to the contract within 60 days of presentation of a valid claim by a contract holder; or

> (2)  if not insured, the contract shall contain a conspicuous statement in substantially the following form:

> "Obligations of the provider under this service contract
> are backed by the full faith and credit of the provider.

*See* N.J.S.A. 56:12-93(m).

43.     Each one of the above eight (8) referenced violations of the SCA triggers

individual violations of the CFA and the TCCWNA.

### *Violations of the TCCWNA*

44.     Page three of the VSC provided to Plaintiff, provides, in relevant part, as follows:

> Due to the requirements of the laws of certain states, some of the
> above coverages, such as towing, may be unavailable.  Please refer
> to the endorsements on this VSC for any exceptions to coverage
> mandated by state law or state regulation.  If you have any
> questions, please contact your dealer or call 800-NISSAN-1.

VSC, Exhibit A, p. 3.

45.     The above quoted provision violates N.J.S.A. 56:12-16 of the TCCWNA because

it does not specify which provisions are or are not enforceable in New Jersey as required by that

statute.  In fact, the VSC does not even list New Jersey as a State with specific requirements that

apply to VSCs.

46.     As a result of the aforesaid violations, misrepresentations, deception, and

unconscionable commercial practices, Plaintiff has sustained damages and an ascertainable loss

including but not limited to, attorneys' fees and costs.

47.     On information and belief, Plaintiff alleges that hundreds, if not thousands, of

consumers have been offered or have signed substantially similar VSCs since July 16, 2014, in

New Jersey, that contain the same unenforceable provisions.

48.     The conduct of the Defendants described herein, and the actions of the

Defendants in imposing on Plaintiff and members of the Class contract provisions that are

illegal, null and void pursuant to the aforesaid consumer protection statutes is part of a fraudulent

and unconscionable scheme designed to deter and prevent consumers such as Plaintiff from

pursuing any remedies against Defendant and/or to obtain monies from New Jersey consumers

such as Plaintiff and members of the Class.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a Class Action pursuant to Rule 23(a) and Rule

23(b)(1), (2) and/or (3) of the Federal Rules of Civil Procedure on behalf of herself and all

members of the following class (the "Class"):

> **All persons, since July 16, 2014 (or such date as discovery may disclose), to whom form contracts, the preprinted portions of which were identical or substantially similar to the VSC (Exhibit A), have been given, displayed, offered, signed and/or entered into, in New Jersey presented by or on behalf of Defendants or its agents.**

Excluded from the Class are Defendants, each of its parents, subsidiaries, authorized distributors

and affiliates, and its legal representatives, officers, board members and the heirs, successors,

and assigns of any excluded person.

50.     The Class is so numerous that joinder of all members is impracticable.

51.     Upon information and belief, during the relevant time period, hundreds, if not

thousands, of consumers were offered or purchased VSCs in New Jersey similar to the type

offered and entered into by Plaintiff and issued by NISSAN which violated the foregoing

consumer protection statutes.

52.     Although the exact number and identities of individual Class members are

presently unknown, the number of Class members can be ascertained from Defendants' records

and other appropriate discovery.  The SCA mandates specific record keeping practices regarding

the sale of VSCs.

53.     There are questions of fact and law which are common to the Class and/or Subclasses that predominate over any questions affecting only individual Class and/or Subclasses members. Among the common questions of law and fact are the following:

a.      Whether NISSAN's VSCs violated the New Jersey Service Contract Act, the New Jersey Truth-in- Consumer Contract, Warranty and Notice Act and/or the New Jersey Consumer Fraud Act.

b.      Whether the Class is entitled to a class-wide injunction barring NISSAN from asserting or attempting to enforce the aforesaid illegal provisions in its VSC; and

c.      Whether the class is entitled to a class-wide injunction barring NISSAN from offering to consumers any VSC that contain the aforesaid illegal provisions.

54.     Plaintiff is a member of the class she seeks to represent, and her claim is typical of the claims of the other members of the Class inasmuch as all such claims arise out of Defendants' form VSCs and Defendants' standard policy and practices relating to the illegal and unconscionable practices and provisions as described herein.  Plaintiff's claims arise from the same factual and legal basis as those of the Class.  Plaintiff has no interest antagonistic to, or in conflict with the Class.  Plaintiff will thoroughly and adequately protect the interest of the Class, having retained qualified and competent legal counsel to represent her and the Class. Accordingly, Plaintiff is an adequate representative of, and will fairly and adequately protect the interests of the Class.

55.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because prosecution of separate actions by individual Class and/or Subclasses members would create  a risk  of  (1) inconsistent  or  varying  adjudications  with  respect  to  individual members of the Class and/or Subclasses which would establish incompatible standards of conduct for the Defendants, or (2) adjudications with respect to such individual members of the Class and Subclasses, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

56.     Class certification is further appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

57.     Class certification is further appropriate under Fed. R. Civ. P. 23(b)(3) because a class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy inasmuch as common questions of law and/or fact predominate over any individual questions which may arise, and, accordingly, there would accrue enormous savings to both the Courts and the Class in litigating the common issues on a class-wide instead of on a repetitive individual basis and inasmuch as no unusual difficulties are likely to be encountered in the management of this class action in that all questions of law and/or fact to be litigated at the liability stage of this action are common to the Class.

58.     This lawsuit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of fact and law common to the Class predominate over the questions affecting only individual members of the Class, and a class action is superior to other available means for the fair and efficient adjudication of this dispute.

59.     The damages suffered by each individual Class member may be disproportionate to the burden and expense of individual prosecution of complex and extensive litigation to proscribe Defendants' conduct and practices.  Additionally, effective redress for each and every Class member against Defendants may be limited or even impossible where serial, duplicate, or concurrent litigation occurs arising from these disputes.  Even if individual Class members could afford or justify the prosecution of their separate claims, such an approach would compound judicial inefficiencies, and could lead to incongruous and conflicting judgments against

Defendants.  A class action is superior to any other available method for the fair and efficient adjudication of this controversy, because: (i) common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there will be efficiencies to the courts and the parties in litigating the common issues on a class basis rather than on an individual basis; (ii) the damages to some members of the Class are larger than to others, but all claims are sufficiently small that individual prosecution of the claim would not be an economically viable alternative; (iii) class treatment is desired for optimal deterrence and compensation; (iv) the economies of scale inherent in litigating similar claims on a common basis will enable this case to be litigated on a cost-efficient basis as a class action, especially when compared to repetitive individual actions; (v) no unusual difficulties are likely to be encountered in the management of this class action as the proofs as to liability are common to all Class members; and (vi) this action would be effectively impossible to bring as individual actions leaving Plaintiff and others similarly situated with no viable remedy.

60.     This litigation presents statutory violations and violations of consumer fraud acts and practices claims of the types that have often been prosecuted on a class-wide basis.

## COUNT ONE

### VIOLATIONS OF THE NEW JERSEY SERVICE CONTRACT ACT, N.J.S.A. §§ 56:12-87, *et seq.*

61.     Plaintiff repeats all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

62.     The VSC, which NISSAN has given, displayed, offered, and entered with Plaintiff and members of the Class violated clearly established legal rights of Plaintiff and the Class under the SCA, CFA, and/or the TCCWNA and/or case law and precedent.

63.     As a result of the aforesaid violations, Defendants have violated the New Jersey

Service Contract Act, N.J.S.A. 56:12-87, *et seq.*

64.     As a result of Defendants' violations, Plaintiff and members of the Class are aggrieved consumers and have been damaged.

65.     Pursuant to N.J.S.A. 56:12-96, Defendants are liable to Plaintiff and each class member for unlawful practices and violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* and violations of New Jersey Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-13. *et seq.*

## COUNT TWO

### VIOLATIONS OF THE TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT, N.J.S.A. §§ 56:12-13, *et seq.*

66.     Plaintiff repeats all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

67.     The VSC, which NISSAN has given, displayed, offered, and entered into with Plaintiff and members of the Class violated clearly established legal rights of Plaintiff and the Class under the SCA, CFA and/or the TCCWNA and/or case law and precedent.

68.     As a result of the aforesaid violations, Defendants have violated the New Jersey Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-13. *et seq.* and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

69.     As a result of Defendants' violations of TCCWNA, Plaintiff and members of the Class are aggrieved consumers and have been damaged.

70.     Pursuant to N.J.S.A. 56:12-17, Defendants are liable to Plaintiff and each class member for a minimum statutory penalty of $100.00, as well as any actual damages and attorneys' fees and costs.

## COUNT THREE

### VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. §§ 56:8-1 *et seq.*

71.     Plaintiff repeats all preceding paragraphs as though fully set forth herein.

72.     Plaintiff and the members of the Classes are "persons" entitled to seek the protections under the CFA.

73.     The Defendants, their conduct and the VSC are all subject to the CFA.

74.     The aforesaid misrepresentations, deceptive and unconscionable business practices of Defendants to Plaintiff and members of the Class constitute violations of the New Jersey Consumer Fraud Act.

75.     The conduct and actions of Defendants, as set forth above, have directly, foreseeably, and proximately caused ascertainable damages and injury to Plaintiff and members of the Class in amounts yet to be determined.

76.     The conduct and actions of Defendants, as set forth above, have directly, foreseeably, and proximately caused ascertainable damages in the amounts Plaintiff and each member of the Class paid for the cost of entering into the VSC.

77.     The actions of Defendants constitute acts, uses, or employment by Defendants of unconscionable commercial practices, misrepresentations, deception, or the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of merchandise or real estate in violation of N.J.S.A. 56:8-1.

78.     As a result of Defendants' unlawful acts or practices, Plaintiff and the Class members have sustained ascertainable losses in amounts to be proven at trial, and Defendants should be ordered to pay, as damages to Plaintiff and the members of the Class, any amounts

23

expended or expenses incurred including, but not limited to, amounts paid to Defendants and legal fees and costs as a result of Defendants' attempts to enforce the above referenced illegal contractual provisions.

## COUNT FOUR

### DECLARATORY AND INJUNCTIVE RELIEF

79.     Plaintiff repeats all preceding paragraphs as though fully set forth herein.

80.     Plaintiff and the class are entitled to a declaratory judgment and/or injunctive relief in the form of an Order:

     a.    Prohibiting NISSAN from displaying, giving, offering or entering into VSCs containing illegal provisions, in the manner described herein.

     b.    Requiring NISSAN to provide notice to all Class members that the aforesaid clauses contained in the VSCs issued to the Class members are void and unenforceable and that Class members who signed such VSCs have undisclosed rights under New Jersey law and may recover statutory attorneys' fees and costs for violations of consumer protection statutes.

     e.    Requiring NISSAN to provide notice to all Class members who may have paid a "processing fee" to cancel the VSC pursuant to the aforesaid contract provisions that such processing fee is illegal, that any monies paid to NISSAN will be refunded

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendants for the following relief:

(a)     An Order certifying the proposed Class herein and appointing Plaintiff and the undersigned counsel of record to represent the Class;

(b)     An Order declaring the Defendants' conduct violates the statutes referenced herein;

(c)     An Order finding in favor of Plaintiff and the Class on all counts as asserted herein;

(d)     An Order awarding Plaintiff and the Class compensatory, treble, consequential,

statutory and/or punitive damages on all counts as asserted herein;

     (e)     An Order awarding prejudgment interest on all amounts awarded;

     (f)     An Order of restitution and all other forms of equitable monetary relief;

     (g)     An Order for injunctive relief as pleaded or as the Court may deem just and proper;

     (h)     An Order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

     (i)     An Order granting such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues in this action.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this Class Action Complaint shall be mailed to the Attorney General of the State of New Jersey within ten days after the filing of this Class Action Complaint with the Court pursuant to N.J.S.A. 56:8-20.

Dated: <u>March 23, 2016</u>

                                        By: <u>s/ Richard Grungo, Jr.</u>

                                        **GRUNGO COLARULO, LLC**

                                        Richard Grungo, Jr., Esquire

                                        William A. Colarulo, Jr., Esquire

                                        1940 Route 70 East,

                                        Cherry Hill, New Jersey 08003

                                        (856) 528-4494

                                        *Attorneys for Plaintiff RoseAnn*
                                        *Romeo and the Class*

# Security+Plus®

## VEHICLE SERVICE CONTRACT

NISSAN

### APPLICATION/DECLARATION

NISSAN EXTENDED SERVICES
NORTH AMERICA
P.O. BOX 685004
FRANKLIN, TN 37068-5004

| VEHICLE | | |
|---|---|---|
| VEHICLE YEAR | MAKE | MODEL |
| 2015 | NISSAN | Altima 2.5 |

**DEALER**

DEALER NUMBER 08074

DEALER NAME WOODBURY NISSAN, INC 1332/08074

CITY WOODBURY STATE NJ R _ _ _ _ _

PHONE ( )(856) 853-0150

| CONTRACT NUMBER | VEHICLE ID NUMBER (17-DIGIT VIN) |
|---|---|
| VSC10500521 | 1N4AL3APXFN902181 |

**LIENHOLDER OR SERVICE PAYMENT PLAN (0% FINANCING)**

NAME Nissan-Infiniti Lease Trust

**APPLICANT**

LAST NAME ROMEO   FIRST ROSEANN   M.I.

STREET / P.O. BOX ADDRESS 2307 PLANTATION DRIVE

CITY GLENDORA   STATE NJ   ZIP CODE 08029

STREET / P.O. BOX ADDRESS 8900 FREEPORT PKWY

CITY IRVING   STATE TX   ZIP CODE 75063

APPLICANT EMAIL

A.M. PHONE ( )   P.M. PHONE ( )

| PRODUCT TYPE | CURRENT ODOMETER READING | DATE YOU PURCHASED VEHICLE | | |
|---|---|---|---|---|
| | 11 | MONTH | DAY | YEAR |
| ☒ RS | | | 9/19/2015 | |

| DEDUCTIBLE | VSC PURCHASE PRICE |
|---|---|
| N) ☒ $0   C) ☐ $100 | $607.00 |

## NEW VEHICLE PLANS
(Time begins on manufacturer's original warranty start date, and Mileage begins at zero)

☒ GOLD PREFERRED (RC)
(Contract Type C)

☐ SILVER PREFERRED (RB)
(Contract Type B)

☐ POWERTRAIN PREFERRED (RA)
(Contract Type A)

| | | |
|---|---|---|
| J) ☐ 24 months/40,000 miles | A) ☐ 48 months/60,000 miles | 1) ☐ 60 months/75,000 miles |
| K) ☐ 36 months/40,000 miles | 4) ☐ 48 months/120,000 miles* | C) ☐ 60 months/100,000 miles |
| G) ☒ 36 months/45,000 miles | B) ☐ 60 months/60,000 miles | D) ☐ 72 months/75,000 miles |
| H) ☐ 36 months/60,000 miles | I) ☐ 60 months/75,000 miles | E) ☐ 72 months/100,000 miles |
| L) ☐ 39 months/39,000 miles | C) ☐ 60 months/100,000 miles | B) ☐ 84 months/100,000 miles |
| M) ☐ 39 months/49,000 miles | 5) ☐ 60 months/120,000 miles* | F) ☐ 84 months/100,000 miles |
| Y) ☐ 48 months/48,000 miles | D) ☐ 72 months/75,000 miles | |

| | |
|---|---|
| E) ☐ 72 months/100,000 miles | 7) ☐ 84 months/120,000 miles* |
| 4) ☐ 84 months/70,000 miles | 8) ☐ 96 months/100,000 miles |
| F) ☐ 84 months/100,000 miles | 9) ☐ 96 months/120,000 miles* |
| 7) ☐ 84 months/120,000 miles* | |
| B) ☐ 84 months/100,000 miles | |
| 9) ☐ 96 months/120,000 miles* | |

* 120,000-mile plans and Powertrain Preferred plans not available for Nissan LEAF

## PRE-OWNED VEHICLE PLANS
(Time begins on vehicle purchase date, and Mileage is added to vehicle's current odometer reading)

☐ GOLD PREFERRED (RG)
(Contract Type G)

☐ SILVER PREFERRED (RN)
(Contract Type N)

☐ POWERTRAIN PREFERRED (RL)
(Contract Type L)

| Eligible: 0-40,000 miles on odometer | Eligible: 40,001-50,000 miles on odometer | Eligible: 50,001-60,000 miles on odometer | Eligible: 60,001-75,000 miles on odometer |
|---|---|---|---|
| L) ☐ 12 months/12,000 miles | T) ☐ 12 months/12,000 miles | P) ☐ 12 months/12,000 miles | Y) ☐ 12 months/12,000 miles |
| M) ☐ 24 months/24,000 miles | U) ☐ 24 months/24,000 miles | Q) ☐ 24 months/24,000 miles | Z) ☐ 24 months/24,000 miles |
| N) ☐ 36 months/36,000 miles | V) ☐ 36 months/36,000 miles | X) ☐ 36 months/36,000 miles | 3) ☐ 36 months/36,000 miles |
| S) ☐ 48 months/48,000 miles | W) ☐ 48 months/48,000 miles | 4) ☐ 48 months/48,000 miles | Eligible: 75,001-100,000 miles on odometer |
| J) ☐ 60 months/60,000 miles | 5) ☐ 60 months/60,000 miles | 7) ☐ 60 months/60,000 miles | R) ☐ 12 months/12,000 miles |
| 6) ☐ 72 months/80,000 miles | | | 2) ☐ 24 months/24,000 miles |

e-NES-ESC-426  0512

## CUSTOMER ACKNOWLEDGEMENT

**New Vehicle VSCs:** Coverage begins on the manufacturer's original warranty start date, with mileage beginning at zero, regardless of the vehicle age or odometer reading at the time of sale. ALTHOUGH ANY OR ALL COMPONENTS OR PARTS MAY BE COVERED BY THE MANUFACTURER'S LIMITED WARRANTY, WARRANTY EXTENSIONS, RECALLS OR CAMPAIGNS.

**Pre-Owned Vehicle VSCs:** The contract term begins on the date of purchase and current odometer reading at the time of purchase. ALTHOUGH ANY OR ALL COMPONENTS OR PARTS MAY BE COVERED BY THE MANUFACTURER'S LIMITED WARRANTY, WARRANTY EXTENSIONS, RECALLS OR CAMPAIGNS. The months and miles of the pre-owned contract term purchased are added to the date and miles on the odometer at the time of purchase. The VSC continues until the expiration date or expiration mileage listed in the Application/Declaration is reached, whichever occurs first.

Nissan Extended Services North America (NESNA) reserves the right to accept, correct, modify or refuse any VSC Application/Declaration. Claims within the first 90 days and/or $1,000 miles of the effective date are subject to review and/or denial for a pre-existing condition. NESNA reserves the right to reject any application or contract for any reason at its discretion upon return of the full amount paid.

[ ] **WA Residents:** By initialing this box, YOU acknowledge that YOU have received the attached VSC which contains information on material conditions that YOU must meet to maintain coverage including, but not limited to, the maintenance schedule to which YOU must adhere; the requirement to document repair and maintenance work; the procedures for filing claims; the work and parts covered by the VSC; the time and mileage limitations; the exclusions of coverage; the right to return the VSC for a full refund; the implied warranty of merchantability of the motor vehicle is not waived if the VSC has been purchased within ninety (90) days of the purchase date of the motor vehicle from a provider who also sold the motor vehicle covered by the VSC. Nissan Security+Plus is administered by Nissan Extended Services North America, DP.

I agree that my VSC is being issued in accordance with the information contained in this Application/Declaration and is subject to the terms and conditions stated therein. I understand that purchase of this VSC is not required in order to purchase or obtain financing for a motor vehicle.

**I agree that maintenance of the above-described vehicle, in accordance with factory standards in the Owner's Manual, is a condition precedent to the coverage under this VSC.** A deductible, if applicable, applies per visit where a covered component is repaired. Please review the attached VSC before signing this Application/Declaration. Please call 1-800-NISSAN-1 if you have any questions.

Policy #: _____

X _____     9/19/2015          X _____     9/19/2015
     APPLICANT'S SIGNATURE                            DATE                        AUTHORIZED DEALER'S SIGNATURE                    DATE

EESC-425  05/12

 **Security+Plus** | **VEHICLE SERVICE CONTRACT**

### 1  HOW DOES MY VEHICLE SERVICE CONTRACT (VSC) PROTECT ME?

In return for your payment, NESNA* will arrange for a Nissan dealer to repair or replace all covered parts of your vehicle (see Section 4 below) when such repair or replacement is due to a "MECHANICAL BREAKDOWN", as defined below, and when all other terms and conditions of this VSC are met. The deductible which you must pay, if any, is listed in the Application/Declaration.

MECHANICAL BREAKDOWN means the inability of a covered part(s) to perform the function(s) for which it was designed, due solely to defects in Nissan materials or faulty workmanship for which Nissan is responsible. MECHANICAL BREAKDOWN does not include damage due to negligence, damage caused by an accident, or the gradual reduction in operating performance due to wear and tear. In addition, this VSC does not provide any benefit for any mechanical failure or breakdown caused by a non-covered part.

*Nissan Extended Services North America, P.O. Box 685004, Franklin, TN 37068-5004, Tel. 615-725-1000.

### 2  WHAT ARE MY VSC TERMS?

This VSC applies during the term shown in the Application/Declaration.

### 3  WHEN DOES MY COVERAGE BEGIN AND END?

**New Vehicle VSCs:** Coverage begins on the manufacturer's original warranty start date, with mileage beginning at zero, regardless of the vehicle age or odometer reading at the time of sale . ALTHOUGH ANY OR ALL COMPONENTS OR PARTS MAY BE COVERED BY THE MANUFACTURER'S LIMITED WARRANTY, WARRANTY EXTENSIONS, WARRANTY RECALLS OR CAMPAIGNS.

**Pre-Owned Vehicle VSCs:** The contract term begins on the date of purchase and current odometer reading at the time of purchase, ALTHOUGH ANY OR ALL COMPONENTS OR PARTS MAY BE COVERED BY THE MANUFACTURER'S LIMITED WARRANTY, WARRANTY EXTENSIONS, RECALLS OR CAMPAIGNS. The months and miles of the pre-owned contract term purchased are additive to the date and miles on the odometer at the time of purchase. This VSC continues until the expiration date or expiration mileage listed in the Application/Declaration is reached, whichever occurs first.

Odometer reading, which appears in the Application/Declaration, means the actual number of miles which the vehicle has been operated since manufacture as indicated on the vehicle's odometer, **unless the odometer is/has been broken, has been replaced or has been tampered with.** In such a situation, NESNA will calculate the total actual number of miles of vehicle operation since manufacture based on the information available. If ever the odometer is tampered with, and/or is inoperative so that the vehicle's total actual number of recorded miles of operation since manufacture cannot be accurately determined by NESNA, then this VSC will be void. Odometer reading reflects the mileage based upon the recording device and numerous factors, and may not reflect actual distance traveled.

### 4  WHAT DOES MY VSC COVER?

**GOLD PREFERRED PLAN ONLY:** This VSC covers repairs needed due to MECHANICAL BREAKDOWN, as defined above, for all Nissan parts and components of your vehicle except for those items described in Section 8.

**SILVER PREFERRED PLAN ONLY:** Covers repairs needed due to MECHANICAL BREAKDOWN, as defined above, for Nissan components in the following categories:

**ENGINE:**

Cylinder block, head(s) and all internal parts, timing gears, tensioner(s), timing chain or belt and cover(s), harmonic balancer (crankshaft pulley), manifolds and collector(s), oil pump, valve cover(s), oil pan, drive plate, flywheel ring gear and engine mounts, turbocharger housing and internal parts, turbocharger valves and actuator, radiator, fan and fan coupling, fan motor, water pump, seals, gaskets, and belts and hoses.

**FUEL:**

Fuel pump(s), electro injection unit, electronic fuel injection sensors, control units and injectors, throttle body injection system, fuel tank and lines, and seals and gaskets.

**TRANSMISSION:**

Transmission case(s) and all internal parts including the torque converter, vacuum modulator, electric control units, oil pan, oil cooler, transmission mounts, transfer case and all internal parts, transfer control unit, and seals and gaskets.

**FRONT WHEEL DRIVE:**

Final drive housing and all internal parts, constant velocity joints (slide joint spider assemblies), and seals and gaskets. Note: constant velocity boots are excluded from coverage.

### REAR WHEEL DRIVE AND FOUR WHEEL DRIVE:
Rear drive axle housing and all internal parts, propeller shaft(s), universal joints (journal assemblies), axle shafts, axle bearings and retainers, companion flanges, free running hubs, constant velocity joints (spider assemblies), and seals and gaskets. Note: constant velocity boots are excluded from coverage.

### SUSPENSION:
Strut assemblies except inserts, upper and lower control arms (links/transverse links) and bushings, tension/compression rods and bushings, stabilizer bars and bushings, connecting rods and bushings, rear arm assembly, torsion bars, upper and lower ball joints, wheel bearings and seals, knuckle spindle, hubs, king pins and bearings, coil and leaf springs, rear axle beam, and electric adjustable shock absorbers.

### STEERING:
Steering gear housing(s) and all internal parts, rack and pinion assembly, power steering pump and reservoir tank, steering column main and upper shafts, steering linkages and couplings, HICAS power cylinder assembly and all internal parts, seals, gaskets, and belts and hoses.

### ELECTRICAL:
Starter motor and solenoid, alternator, voltage regulator, ignition coil, distributor, ignition switch and module, transistor ignition unit, electronic spark control detonation sensor and controller, wiring harness, horn, manually and mechanically operated switches, relays, sensors, electronic instrument cluster, electronic driver information display and module (head up display unit), drive computer display, windshield wiper and washer motors, power window motors and regulators, power door locks, power seat motors, sunroof motor, power mirror motors and actuators, keyless entry (excludes immobilizer key and remote keyless entry switch assembly), automatic speed control, O.E.M. anti-theft system, computer units and sonar suspension, Nissan-supplied audio system components, Nissan-supplied mobile entertainment systems, and Nissan-supplied navigational systems.

### BRAKES:
Master cylinder, vacuum assist booster, wheel cylinders, disc calipers, hydraulic valves, lines and fittings, anti-lock braking system, seals, gaskets, and belts and hoses.

### NISSAN AIR CONDITIONING (ORIGINAL EQUIPMENT MANUFACTURER ONLY):
Compressor, clutch and pulley, condenser, evaporator, receiver dryer, seals and valves, temperature control programmer, blower motor, heater core, and belts and hoses.

### POWERTRAIN PREFERRED PLAN ONLY: Covers repairs needed due to MECHANICAL BREAKDOWN, as defined above, for Nissan components in the following categories:

### ENGINE:
Cylinder block, head(s) and all internal parts, timing gears, tensioner(s), timing chain or belt and cover(s), harmonic balancer (crankshaft pulley), manifolds and collector(s), oil pump, valve cover(s), oil pan, drive plate, flywheel ring gear and engine mounts, turbocharger housing and internal parts, turbocharger valves and actuator, radiator, fan and fan coupling, fan motor, water pump, and seals and gaskets.

### TRANSMISSION:
Transmission case(s) and all internal parts including the torque converter, vacuum modulator, electric control units, oil pan, transmission mounts, transfer case and all internal parts, and seals and gaskets.

### FRONT WHEEL DRIVE:
Final drive housing and all internal parts, constant velocity joints (slide joint spider assemblies), and seals and gaskets. Note: constant velocity boots are excluded from coverage.

### FUEL:
Fuel pump(s), electro injection unit, electronic fuel injection sensors, control units, injectors, fuel tank and lines, and seals and gaskets.

### REAR WHEEL DRIVE AND FOUR WHEEL DRIVE:
Rear drive axle housing and all internal parts, propeller shaft(s), universal joints (journal assemblies), axle shafts, axle bearings and retainers, free running hubs, constant velocity joints (spider assemblies), and seals and gaskets. Note: constant velocity boots are excluded from coverage.

### SUSPENSION:
Strut assemblies except inserts, upper and lower control arms (links/transverse links) and bushings, tension/compression rods and bushings, stabilizer bars and bushings, connecting rods and bushings, rear arm assembly, torsion bars, upper and lower ball joints, wheel bearings and seals, knuckle spindle, hubs, king pins and bearings, front coil and leaf springs.

### STEERING:
Steering gear housing(s) and all internal parts, rack and pinion assembly, power steering pump, steering column main and upper shafts, steering linkages and couplings, HICAS power cylinder assembly and all internal parts, and seals and gaskets.

### ELECTRICAL:
Starter motor and solenoid, alternator, voltage regulator, ignition coil, distributor, ignition switch and module, transistor ignition unit, electronic spark control detonation sensor and controller, wiring harness, horn and windshield wiper motor.

### BRAKES:
Master cylinder, vacuum assist booster, wheel cylinders, disc calipers, hydraulic valves, lines and fittings, and seals and gaskets.

**NISSAN AIR CONDITIONING (ORIGINAL EQUIPMENT MANUFACTURER ONLY):**
Compressor, clutch and pulley, condenser, evaporator, receiver dryer, and seals and valves.
Only those specific parts listed in this VSC are covered.

**DEDUCTIBLE:**
Repairs for components covered under this VSC are subject to the deductible listed in the Application/Declaration, per visi

**REPLACEMENT PARTS:**
Replacement of any part will be made with a new or remanufactured Genuine Nissan or Nissan-approved replacement part i
at the time of repair. The replacement part may differ from the original part.

**CAR RENTAL REIMBURSEMENT (GOLD PREFERRED AND SILVER PREFERRED PLANS ONLY):**
If you require alternate transportation due to the MECHANICAL BREAKDOWN of a covered part, then this VSC will pr
reimbursement for the actual expenses of substitute transportation up to $35 per day, to a maximum of five (5) days, and
per breakdown. Rental must be made from an authorized rental agency or your repairing Nissan dealer. Substitute transpor
is based on the Nissan Flat Rate Time required to repair the vehicle according to the following table:

| Repair Time Required | Number of Days Allowed | Maximum Reimbursement |
|---|---|---|
| 0.1 - 8.0 Hours | 2 | up to $70 |
| 8.1 - 16.0 Hours | 3 | up to $105 |
| 16.1 - 24.0 Hours | 4 | up to $140 |
| 24.1 - 32.0 Hours | 5 | up to $175 |

**EMERGENCY ROADSIDE ASSISTANCE\* BENEFITS**
Your Security+Plus Preferred Vehicle Protection Plan includes a Roadside Assistance Program.

- **ROADSIDE ASSISTANCE COVERAGE**
Upon receiving your call, a Roadside Assistance administrator will dispatch a qualified service facility to provide assist
battery boost (jump-start); flat tire change (with your good spare); out-of-gas delivery (maximum $5); and lock-out assist
to a maximum of $100 per claim. Battery boost and gas delivery does not apply to Nissan LEAF; see enhanced towing as
for Nissan LEAF below.

- **TOWING (GOLD PREFERRED AND SILVER PREFERRED PLANS ONLY)**
If your vehicle requires towing due to the MECHANICAL BREAKDOWN of a covered part, then this VSC will provide reimb
for the actual towing expense incurred in towing it to the nearest participating Nissan dealer, not to exceed $100 per
Nissan LEAF, towing is covered via flatbed tow truck in the sole discretion of NESNA to: 1) the VSC holder's home fo
2) an independent charging facility, 3) the closest authorized Nissan Certified Electric Vehicle dealership for charging
4) the VSC holder's choice of a Nissan Certified Electric Vehicle dealership within 50 miles beyond the nearest Niss
Electric Vehicle dealership for charging or repair. The $100 limit does not apply to Nissan LEAF.

- **TRIP INTERRUPTION BENEFITS (GOLD PREFERRED AND SILVER PREFERRED PLANS ONLY)**
Emergency travel/trip interruption coverage is provided should any MECHANICAL BREAKDOWN occur when you ar
or more away from home. Benefits may apply to the occurrence of the following expenses: alternate transportation
lodging. This VSC will provide coverage for trip interruption, not to exceed $500 per claim.

**FOR 24-HOUR ROADSIDE ASSISTANCE CALL 800-225-2476**
**(GT·R owners call 866-668-1GTR; LEAF owners call 800-801-6161)**

\*Services provided through Cross Country Motor Club, Inc., Medford, MA 02155, except in AK, CA, HI, OR, WI, an
services are provided through Cross Country Motor Club of California, Inc., Medford, MA 02155.
Due to the requirements of the laws of certain states, some of the above coverages, such as towing, may be unavailable
Please refer to the endorsements on this VSC for any exceptions to coverage mandated by state law or state regulato
you have any questions, please contact your dealer or call 800-NISSAN-1.

**5   WHAT DO I DO IN CASE OF THE MECHANICAL BREAKDOWN OF A COVERED PART?**

5.1  It is your responsibility to protect the vehicle against any further damage.

5.2  Return the vehicle to the selling dealer if possible, or the nearest participating Nissan dealer.

5.3  Provide this VSC to the repairing dealer to obtain coverage afforded.

5.4  Provide proof of maintenance to the repairing dealer, as applicable (refer to section 7).

5.5  Pay the deductible shown, if any, in the Application/Declaration. All other costs relating to excluded items will be th
of the holder of this VSC.

5.6  If emergency repairs are required and performed outside of normal business hours, then please contact 800-
next business day.

**WHAT IF I NEED ASSISTANCE LOCATING A NISSAN REPAIR FACILITY?**

The repair or replacement must be performed by your selling Nissan dealer or by a participating Nissan dealer, except as otherwise approved by NESNA. Please call Nissan Consumer Affairs at **800-NISSAN-1** if you need assistance locating the nearest Nissan dealer.

**7.  WHAT ABOUT MAINTENANCE AND RECORD-KEEPING?**

You are responsible for properly using, maintaining and caring for your vehicle as outlined in the Scheduled Maintenance section of your Nissan Owner's Manual. Evidence of the performance of the required maintenance must be kept and presented as proof of such maintenance in connection with related repairs covered by this VSC. To assist you in maintaining appropriate records, the service record section of your Warranty Information Booklet can be used with supporting repair invoices, receipts and other such records. FAILURE TO PROVIDE SUCH EVIDENCE, OR FAILURE TO PROPERLY MAINTAIN THE VEHICLE IN ACCORDANCE WITH YOUR OWNER'S MANUAL, MAY DISQUALIFY YOU FROM COVERAGE.

**8.  WHAT IS NOT COVERED BY MY VSC?**

8.1  Nissan Electric Vehicle lithium-ion battery (your 8-year/100,000-mile Original Equipment Manufacturer (OEM) factory battery warranty still applies. See the Warranty Information Booklet for complete details, terms and conditions). _POWERTRAIN PREFERRED PLAN ONLY:_ All items above, plus the following: Any component of an electrically-powered vehicle; i.e., any vehicle whose propulsion is provided by an electric motor and/or power source is not eligible for and is not covered by this VSC. Any and all electric and hybrid vehicle systems/components, including but not limited to high voltage (HV) components (including batteries and cells), hybrid transmission, powertrain control systems: inverters, converters, motors, generators, battery chargers, HV PCUs and PCMs, and regenerative braking systems.

8.2  Paint, exhaust system, carpet, glass, upholstery, soft trim, weatherstripping, convertible soft top fabric and liner, moldings, bright metal, clutch disc, pressure plate and throw out bearing (manual transmission), air bags and any related sensors and modules, conversion of the air conditioning system to operate on R134, battery and cables, lenses and bulbs, tires, brake drums, disc brake rotors, wheels, strut inserts, shock absorbers, squeaks, rattles, water leaks, wind noise, constant velocity boots (Silver Preferred and Powertrain Preferred Plans), immobilizer key, and remote keyless entry switch assembly. _POWERTRAIN PREFERRED PLAN ONLY:_ All items above, plus the following: Any and all in-vehicle communications systems/and/or mobile entertainment systems, navigational systems, audio system components, and belts and hoses.

8.3  Maintenance service expenses specified in your Owner's Manual such as: engine tune-up, wheel balance and alignment, spark plug and wire replacement/adjustment, timing belt replacement, fluid and lubricant replacement/replenishment, wiper blade replacement, headlight aiming, filter replacement, and brake pad and shoe replacement.

8.4  Any repairs relating to loss of performance caused by normal wear and tear unless an actual MECHANICAL BREAKDOWN occurs.

8.5  Any failures due to damage resulting from: accident, fire, theft, water damage, freezing, vandalism, explosion, natural disaster, acts of God, physical damage, or any other outside influences.

8.6  Any failures resulting from:
   - Lack of normal maintenance as specified in your vehicle Owner's Manual
   - Overheating of the powertrain
   - Use of improper or contaminated fuels, fluids or lubricants
   - Failure to maintain proper fluid, coolant or lubricant levels
   - Use of inferior, modified, or non-approved parts
   - Modification of the vehicle beyond the original factory specifications
   - Negligent operation of a vehicle with a failed component(s)
   - Pulling a trailer or other vehicle that exceeds Nissan's recommendations or exceeds the maximum Gross Vehicle Weight (GVW) of the vehicle

8.7  Any failures due to rust or corrosion, regardless of cause.

8.8  Any failures caused by racing or other competition.

8.9  Service adjustments not usually associated with the replacement of parts.

8.10 Any incidental or consequential damages such as loss of the use of the vehicle, storage charges, inconvenience or commercial loss.

8.11 Any vehicle with an inoperative or altered speedometer and/or odometer so that the actual mileage of the vehicle cannot be determined.

8.12 Any vehicle used for commercial uses (such as taxi, limousine, rental, snow plow, etc.).

8.13 Any expense that is covered by your New Vehicle Warranties, parts warranties, or other VSCs.

8.14 Any repair or replacement that has not been authorized by NESNA, or in which the information provided to NESNA cannot be verified as accurate or is found to be deceptive.

4

8.15 This VSC, and all coverages described herein, does not apply to any vehicle which has ever been:
- the subject of a "salvage" or similar title under any state's law, or
- "totaled" by a licensed insurance company; that is, been the subject of any insurance company's cash payment of claim in lieu of repairs because of a determination that the cost of repairs exceeded the actual cash value of the vehicle. If this VSC is written on such a vehicle, then the full amount of NESNA's liability under this VSC is limited to a refund from NESNA of the amount paid to NESNA for this VSC.

8.16 Liability for damage to property or injury to or death of any person arising out of the operation, maintenance, or use of the vehicle described in this VSC, whether or not related to the PARTS COVERED by this VSC.

8.17 Any vehicle not distributed by Nissan North America, Inc.

8.18 Repairs of covered components which components are still covered by a Nissan warranty, even if the particular repair is excluded from coverage by the terms of the warranty.

**NESNA'S MAXIMUM LIABILITY UNDER THIS VSC IS AS FOLLOWS: TOTAL ACCUMULATIVE CLAIMS DURING THE TERM OF THIS VSC SHALL NOT EXCEED THE PRIVATE PARTY VALUE OF THE VEHICLE AS LISTED BY KELLEY BLUE BOOK® IMMEDIATELY PRECEDING THE LOSS DUE TO THE MOST CURRENT CLAIM.**

**This VSC provides coverage only with respect to MECHANICAL BREAKDOWNS which occur during this VSC period in the United States (excluding U.S. Territories).**

**9   LEGAL DEFINITIONS OF MY VSC**

THIS VSC IS NOT A WARRANTY, AN EXTENSION OF A NEW VEHICLE WARRANTY, OR AN IMPLIED OR GENERAL WARRANTY AND IT IS NOT A CONDITION OF THE SALE OR FINANCING OF THE VEHICLE. This VSC is a "Service Contract" as defined in federal law. (See 15 USCS SEC. 2301 (8).) BY ENTERING INTO THIS VSC, YOU DO NOT WAIVE ANY APPLICABLE WARRANTIES. Be sure to read this VSC carefully so that you understand the difference in coverage between your Warranties and this VSC. FURTHER, you are advised that there are various state and federal laws that protect your interests as a consumer. In the event of a problem that cannot be resolved with NESNA, you may have other rights and remedies available to you.

**10   ARE THERE ANY OPTIONS/EXCLUSIONS TO MY VSC?**

Specific requirements apply to VSCs sold in the following states:

**Alabama:** Cancel: Fee is $25. Obligations of NESNA under this VSC are backed by the full faith and credit of the provider.

**Arizona:** Cancel: Fee is $25. CONTRACTS CANNOT BE CANCELLED OR COVERAGE VOIDED FOR THE FOLLOWING REASONS: 1) PRE-EXISTING CONDITIONS; 2) PRIOR USE OR THE ODOMETER HAS BEEN TAMPERED WITH PRIOR TO YOUR PURCHASE OF THE VEHICLE; 3) MISREPRESENTATION BY EITHER THE MOTOR VEHICLE DEALER OR ITS SUBCONTRACTORS; 4) INELIGIBILITY FOR THE PROGRAM INCLUDING GRAY MARKETS, HIGH PERFORMANCE AND GM DIESEL AUTOS.

Transfer: Fee is $25. Your refund will not be reduced by claims cost.

All Consumer complaints are subject to the provisions of A.R.S. 20-1095.04 and 20.1095.09. You may file such complaints directly with the Arizona Department of Insurance Consumer Affairs Division (toll-free number 800-325-2548 or email to consumer@id.state.az.us).

Under Section 8, items 8.1, 8.15 and 8.17 do not apply.

THIS VSC IS EFFECTIVE AS OF THE EFFECTIVE DATE SHOWN ABOVE, AND ITS TIME AND MILEAGE LIMITS BEGIN TO RUN AS OF THIS DATE, EVEN THOUGH ANY COMPONENTS OR PARTS COVERED BY THE MANUFACTURER'S LIMITED WARRANTY ARE NOT COVERED BY THIS VSC UNTIL EXPIRATION OF SUCH WARRANTY.

**California:** Nissan Extended Services North America, GP, P.O. Box 685004 (A-4-F), Franklin, TN 37068-5004, Tel. 615-725-1000, CA VSC License #0E81392.

NESNA is the sole obligor under this VSC and is solely responsible for payment of or reimbursement for all covered claims. If any promise made in this VSC has been denied or has not been honored within 60 days after your request, you may contact the California Department of Insurance at 1-800-927-4357.

In consideration of the provisions and stipulations of this VSC together with such other provisions, stipulations and agreements as may be added thereto, it is agreed that the lienholder listed in the Application/Declaration shall be provided coverage under such VSC to the extent of its financial interest in the covered vehicle. This VSC is a "Service Contract" as defined in federal law (see CIC 12800 et seq.). Replace all references to 'MECHANICAL BREAKDOWN' with 'DEFECT IN MATERIALS OR WORKMANSHIP'.

Cancel: You or a person authorized by you may cancel this VSC by submitting a written cancellation request which includes the mileage (odometer reading) of the vehicle at the time the cancellation is to be effective, and mailing this information to your selling dealer as listed under the Application/Declaration.

a) NESNA and/or the Lienholder may cancel this VSC within sixty (60) days under the following conditions:

(1) Notice of cancellation is mailed to you postmarked before the 61st day after the date the contract was sold by the selling dealer.

(2) NESNA and/or the Lienholder provides you with a refund equal to the full purchase price stated in this VSC within thirty (30) days from the date of cancellation. However, if NESNA has paid a claim, or has advised you in writing that it will pay a claim, it may provide a pro rata refund, less the amount of any claims paid prior to cancellation. In addition, a cancellation fee of $25

or 10% of the retail price, whichever is lesser, applies for consumer-initiated cancellations after 60 days for new vehicle plans and 30 days for used vehicle plans, regardless of whether a claim is filed.

(3) This VSC ceases to be valid no less than five days after the postmark date of the notice.

(4) The notice states the specific grounds for the cancellation.

(b) NESNA and/or the Lienholder may at any time cancel this VSC if: a) your vehicle is a total loss or repossessed, b) your odometer has been stopped or changed during the term of this VSC, c) the registered vehicle has been used in any manner not covered by this VSC, or d) nonpayment by you, conditioned upon each of the following:

(1) Notice of cancellation is mailed to you.

(2) If any refund is owed pursuant to Section 1794.41 of the Civil Code, the refund is paid within 30 days of the date of cancellation.

(3) This VSC ceases to be valid no less than five days after the postmark date of the notice.

(4) The notice states the specific grounds for the cancellation.

(c) NESNA and/or the Lienholder may at any time cancel this VSC for material misrepresentation or fraud by you, conditioned upon each of the following:

(1) Notice of cancellation is mailed to you

(2) A pro rata refund of the purchase price stated on the VSC is paid within 30 days of the date of cancellation.

(3) The notice states the specific nature of the misrepresentation.

(d) If NESNA cancels this VSC it is liable for any claim reported to NESNA if the claim is reported prior to the effective date of cancellation and is covered by this VSC. For the purpose of this subdivision, you are deemed to have reported a claim if you have completed the first step required under this VSC for reporting a claim.

(e) If NESNA cancels this VSC pursuant to subdivision (b), (c), or (d) and pays a claim, or has advised you in writing that it will pay a claim, NESNA may provide a pro rata rather than full refund, less the amount of any claims paid prior to cancellation.

NOTE: If this VSC was financed, the refund will be paid to the lienholder unless proof of pay-off is submitted.

Transfer: Fee is $25.

**Colorado:** NESNA is the sole obligor under this VSC and is solely responsible for payment of or reimbursement of all covered claims. The obligations of NESNA under this VSC are guaranteed under a motor vehicle mechanical reimbursement policy underwritten by American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157.

**Connecticut:** In the event of a dispute regarding the terms of this VSC, Purchaser may file a formal written complaint to State of Connecticut, Insurance Department, P.O. Box 816, Hartford, CT 06142-0816, Attention: Consumer Affairs. The written complaint must contain a description of the dispute, the purchase or lease price of the vehicle, the cost of repair of the vehicle and a copy of the VSC. Should a VSC expire while a vehicle is at a NESNA authorized repair facility for a covered repair, NESNA will complete the repair [begun prior to the expiration of the VSC (based on the repair order open date).]

**Florida:** Nissan Security+Plus is administered by Nissan Extended Services North America, Inc., License #60128. The retail price charged for this VSC is not regulated by the Florida Office of Insurance Regulation.

Cancel: If the VSC is cancelled within sixty (60) days from the date of purchase, then you will receive a full refund less any claims paid. If the VSC is cancelled after sixty (60) days, then the refund will be calculated as follows: If the VSC is cancelled by NESNA and/or the Lienholder, you will receive one hundred percent (100%) of the paid unearned pro rata premium, less a cancellation fee not to exceed five percent (5%) of the gross premium paid by the VSC holder, and not to exceed $25. If you cancel the VSC, NESNA shall return directly to you not less than ninety percent (90%) of the unearned pro rata premium, less a cancellation fee not to exceed five percent (5%) of the gross premium paid by the VSC holder, and not to exceed $25. NESNA remains responsible for full refunds to you on cancelled VSCs. Your salesperson or agent is responsible for the refund of their unearned pro rata commission.

Transfer: Fee is $40.

**Georgia:** Obligations of NESNA under this VSC are backed by the full faith and credit of the provider.

This VSC shall be non-cancelable by NESNA except for fraud, material misrepresentation or failure to pay the consideration due therefore. If you cancel this VSC, NESNA shall refund the excess of the consideration paid for this VSC above the customary short rate for the expired term of the VSC. Your refund will not be reduced by the amount of the claim.

Under Section 11, the last line in the third paragraph is deleted.

**Idaho:** Obligations of NESNA under this VSC provider are guaranteed under a VSC reimbursement insurance policy. Should NESNA fail to pay or provide service on any claim within sixty (60) days after proof of loss has been filed, the VSC holder is entitled to make a claim directly to American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157, Tel. 800-358-8885. Coverage afforded under this motor VSC is not guaranteed by the Idaho Insurance Guarantee Association.

**Illinois:** The cancellation fee is $50 or 10% of the retail price, whichever is lesser. NESNA is the sole obligor under this VSC and is a) the party responsible for honoring cancellation requests, and b) solely responsible for payment of or reimbursement for all covered claims.

**Indiana:** Obligations of NESNA under this VSC provider are guaranteed under a VSC reimbursement insurance policy. Should NESNA fail to pay or provide service on any claim within sixty (60) days after proof of loss has been filed, the VSC holder is entitled to make a claim directly to American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157, Tel. 1-866-

306-6694. Proof of payment to NESNA shall be considered proof of payment to American Bankers Insurance Company of Florida, issuer of the insurance policy that insures NESNA's obligation.

**Iowa:** NESNA is the sole obligor under this VSC and is solely responsible for payment of or reimbursement for all covered claims. Consumers requesting additional information pertaining to this VSC may contact the Iowa Insurance Division at the following address: Iowa Securities Bureau, Division of Insurance, 340 East Maple Street, Des Moines, IA 50319-0066, Tel. 515-281-4441.

**Kentucky:** In consideration of the provisions and stipulations of this VSC, it is agreed that the lienholder identified in the Application/Declaration shall be provided coverage under this VSC to the extent of its financial interest in the covered vehicle.

**Louisiana:** Under Section 11, the phrases "provided you have not filed a claim" and "if you have filed a claim" are deleted.

**Maine:** Your vehicle is covered under an express dealer warranty for thirty (30) days. The coverage provided under your VSC begins upon the expiration of:

1. The thirty-day dealer express warranty period.
2. The New Vehicle Limited Warranty, if any.

**Minnesota:** This VSC is administered by Nissan Extended Services North America, who is obligated to perform under this VSC. The obligations of NESNA under this VSC are guaranteed under a motor vehicle mechanical reimbursement policy underwritten by American Reliable Insurance Company, 11222 Quail Roost Drive, Miami, FL 33157.

Section 8 is amended to read: 8.11 Any coverage under this VSC if the information provided by the purchaser of this VSC is later discovered by NESNA to have been either false or clearly misleading in the submission of a claim. In Section 7, add "Statute 325F.662, subd.2, provides for express warranty coverage on used vehicles as follows: (1) if the used motor vehicle has less than 36,000 miles, the warranty must remain in effect for at least sixty (60) days or 2,500 miles, whichever comes first; (2) if the used motor vehicle has 36,000 miles or more but less than 75,000 miles, the warranty must remain in effect for at least thirty (30) days or 1,000 miles, whichever comes first. All coverage provided for your vehicle under this motor VSC shall exclude coverage currently in force under any express warranty providing the same coverage for such vehicle as outlined above."

Section 11 is amended to include the following: NESNA shall mail a written notice to you at your last known address at least fifteen (15) days prior to cancellation.

**Mississippi:** This VSC is administered by Nissan Extended Services North America, who is obligated to perform under this VSC. The obligations of NESNA under this VSC are guaranteed under a motor vehicle mechanical reimbursement policy underwritten by American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157. Section 11 is amended to include the following: NESNA shall mail a written notice to you at your last known address at least fifteen (15) days prior to cancellation.

**Missouri:** Nissan Security+Plus is administered by Nissan Extended Services North America, Inc., P.O. Box 685004 (A-4-F), Franklin, TN 37068-5004, Tel. 615-725-1000.

**Nebraska:** The obligations of NESNA under this VSC are insured by a policy of insurance issued by American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157. Please call 1-866-306-6694 for instructions.

**New Hampshire:**

1. No cancel or transfer fee will be charged for purchases of VSCs.
2. Replacement of any part may be made with a part of like kind or quality.
3. For terms, conditions and exclusions regarding what is not covered under this VSC, see the appropriate section of the VSC.
4. This VSC covers the specific components set forth therein upon expiration of the manufacturer's warranty.

**New York:** Obligations of NESNA under this VSC are backed by the full faith and credit of the provider. VSC holders have the right to return their VSC, pursuant to Sections 7905(n) and 7903(e) of Article 79 of the state Insurance Law. This VSC contains a termination provision requiring the VSC provider to mail written notice to the consumer at least 15 days prior to cancellation by the VSC provider, unless the termination is for nonpayment of the provider fee, material misrepresentation, or substantial breach of duties by the consumer, pursuant to Section 7905(k) of the state Insurance Law.

**North Dakota:** Nissan Security+Plus is administered by Nissan Extended Services North America, Inc., P.O. Box 685004 (A-4-F), Franklin, TN 37068-5004, Tel. 615-725-1000.

**Oregon:** NESNA is the sole obligor under this VSC and is solely responsible for all covered claims. All VSCs issued by NESNA, Inc. are guaranteed by its parent company, NESNA, GP, P.O. Box 685004 (A-4-F), Franklin, TN 37068-5004, Tel. 615-725-1000. Your refund may be requested and obtained directly from NESNA, or requested from the selling dealer for distribution from the dealer or directly from NESNA.

**South Carolina:** Obligations of NESNA under this VSC are backed by the full faith and credit of the provider. Consumers requesting additional information or in the event of a problem that cannot be resolved with NESNA may contact the South Carolina Department of Insurance, Office of Special Services, P.O. Box 100105, Columbia, SC 29202-3105, Tel. 800-768-3467.

**Texas:** Obligations of NESNA under this VSC are backed by the full faith and credit of the provider.

Consumers requesting additional information or in the event of a problem that cannot be resolved with NESNA may contact the Texas Department of Licensing and Regulation, P.O. Box 12157, Austin, TX 78711, Tel. 800-803-9202.

**Utah:** Obligations of NESNA under this VSC are guaranteed under a VSC reimbursement insurance policy. Should NESNA fail to pay or provide service on any claim within 60 days after proof of loss has been filed, the contract holder is entitled to make a claim directly to American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157, Tel. 800-358-8885.

**Wyoming:** Obligations of NESNA under this VSC are backed by the full faith and credit of the provider.

Under Section 11, the following state requirements apply: If this VSC was financed and no proof of payoff is submitted, then the refund will be paid to the purchaser and the lienholder as an additional payee. Lienholders may cancel this VSC only if your vehicle is a total loss or repossessed.

1. Provisions for cancellation by the VSC holder: W.S. 26-49-103(e) "... A ten percent (10%) penalty per month shall be added to a refund that is not paid or credited within forty-five (45) days after return of the VSC to the provider."

2. Provisions for cancellation by the VSC provider: W.S. 26-49-105(k) "... The provider of the VSC shall mail a written notice to the VSC holder at the last known address of the VSC holder contained in the records of the provider at least ten (10) days prior to cancellation by the provider. Prior notice is not required if the reason for cancellation is nonpayment of the provider fee, a material misrepresentation by the VSC holder to the provider or a substantial breach of duties by the VSC holder relating to the covered product or its use."

## 11 HOW DO I CANCEL MY VSC?

You or a person authorized by you may cancel this VSC by submitting a written cancellation request which includes the mileage (signed Odometer Statement or recent service record) of the vehicle at the time the cancellation is to be effective, and mailing this information to your selling dealer as listed in the Application/Declaration.

NESNA and/or the Lienholder may cancel this VSC if: a) your vehicle is a total loss or repossessed, or b) your odometer has been stopped or changed during the term of this VSC, or c) the registered vehicle has been used in any manner not covered by this VSC. If this VSC is cancelled within sixty (60) days from the VSC effective date, then you will receive a full refund provided you have not filed a claim. If you have filed a claim or if this VSC is cancelled after sixty (60) days, then the refund will be calculated based on the greater of the time in force or the mileage driven compared to the total time or mileage of your term. In addition, a processing fee of $50 (or as noted in Section 10) will be deducted from the refund.

If the VSC was financed, then the refund will be paid to the lienholder unless proof of pay-off is submitted.

For questions, please contact your selling dealer or call 1-800-NISSAN1.

## 12 HOW DO I TRANSFER MY VSC?

This VSC is for the benefit of the Purchaser, and applies only to the vehicle listed in this VSC. However, this VSC may be transferred to subsequent owners of the covered vehicle under the following conditions:

1. The vehicle's service records are current and indicate that the vehicle was maintained in accordance with Nissan's recommendations. In the event service records are not available, NESNA may require the vehicle to be inspected and serviced at an approved repair facility at the owner's expense to ensure the vehicle has been properly maintained. If the inspection and service disclose abnormal vehicle conditions, then the transfer request may be rejected. This determination shall be within the sole discretion of NESNA.

2. The transfer request is made within thirty (30) days of change in ownership.

3. The transfer information and the appropriate signatures are provided in the Transfer Certificate section.

4. A transfer fee of $50 (or as noted in Section 10), payable to NESNA, is included with the transfer request. Payment may be by check or money order.

A new VSC will be sent to the subsequent owner after NESNA's receipt and successful processing of all requested material.

9



Security+Plus®

EMERGENCY ROADSIDE ASSISTANCE
800-225-2476



Security+Plus®

EMERGENCY ROADSIDE ASSISTANCE
1-800-225-2476